# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES PHILLIPS** | : | |
| | : | |
| Petitioner | : | |
| v. | : | 3:11-CV-1336 |
| | : | (JUDGE MARIANI) |
| **ERIC HOLDER, ISAAC FULWOOD,** | : | |
| **WARDEN B.A. BLEDSOE** | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM OPINION

### Introduction

Before the Court is Petitioner's Motion for Reconsideration (Doc. 18) of the Court's Order (Doc. 17) adopting Magistrate Judge Carlson's Report & Recommendation ("R&R") (Doc. 12). For the Court to grant the Motion for Reconsideration, Petitioner bears the burden of showing one of the following three grounds for relief: (1) there has been an intervening change in controlling law; (2) evidence not previously available has been discovered; or (3) there is a need to correct a clear error of law or to prevent a manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Petitioner has not made any of the above showings. Instead, Petitioner raises the same arguments he made in his Objections (Doc. 13) to Judge Carlson's R&R (Doc. 12).[1]

---

[1] The Court will not address Judge Carlson's determination that this action is a second and successive petition barred by the abuse of the writ doctrine. Though Judge Carlson concluded that the relief sought by Petitioner in his previous litigation was immediate release from prison, the district court in that case concluded otherwise: "suits which seek relief that will render invalid the state procedures used to deny parole eligibility . . . and parole suitability . . . , may be brought pursuant to § 1983 because success on such claims would not necessarily spell speedier release." *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 84 (D.D.C. 2008) (quoting *Wilkinson v. Dotson*, 544

## Analysis

### Res judicata

"Res judicata requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies. *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009) (internal citations omitted). "Collateral estoppel . . . requires of a previous determination that (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Id*. The Third Circuit "has previously noted that 'the preferred usage' of the term res judicata 'encompasses both claim and issue preclusion.'" *Id*. (citing *Venuto v. Witco Corp.*, 117 F.3d 754, 758 n.5 (3d Cir. 1997)).

A careful reading of the D.C. Circuit's opinion in *Philips v. Fulwood* shows that in this habeas action and Petitioner's previous § 1983 action, Petitioner advanced the same claim: that application of the 2000 Parole Regulations rather than an earlier set of Regulations was an *ex post facto* clause violation that significantly increased the risk of prolonging his incarceration. 616 F.3d 577 (D.C. Cir. 2010). The D.C. Circuit resolved the claim on the merits, concluding that a comparison of the 1987 and 2000 Regulations revealed that both sets of Regulations gave the D.C. Parole Board (and later, Commission) the discretion to

---

U.S. 74, 82, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005)). "Were these plaintiffs to prevail in their *ex post facto* challenge, they would gain at most a new parole hearing at which . . . the USPC may, in its discretion, decline to shorten their prison terms." *Id*. (quoting *Wilkinson*, 544 U.S. at 82, 125 S. Ct. 1242).

upwardly depart from the guidelines. As such, the 2000 Regulations did not create a significant risk of prolonging Petitioner's incarceration. *Id.* at 582. Finally, the Defendant in the previous litigation was Isaac Fulwood, Chairman of the United States Sentencing Commission. In this case, Petitioner again files suit against Mr. Fulwood, as one of three Respondents.

Petitioner argues that this case is different from his previous suit because there, he requested a comparison of the 1987 Regulations with the 2000 Regulations, whereas here, he argues that the Parole Board should have used the 1972 Regulations *or* the 1987 Regulations. (Doc. 1, ¶¶ 47, 54, 58, 60, 62). This argument is also without merit. Under the doctrine of claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised in that action.*" *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 259-60 (3d Cir. 2010) (quoting *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 473, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998)) (internal citations and quotation marks omitted) (emphasis added). Though the 1972 Regulations were in force at the time of Petitioner's offenses in 1977, he specifically requested the D.C. Circuit to apply the 1987 Regulations rather than the 1972 Regulations. *Phillips*, 616 F.3d at 581. Petitioner chose to forego relief under the 1972 Regulations and cannot raise the claim at this time. Thus, the D.C. Court's "judgment on the merits in a case involving issues and parties identical to those in the case before this court meets the requirements for res judicata." *5 Unlabeled Boxes*, 572 F.3d at 174-75.

## The Merits

Petitioner, however, cites *Burnside v. White* for the proposition that "a decision in another case is not res judicata as to a habeas proceeding." 760 F.2d 217, 219 (8th Cir. 1985) (internal citations omitted). Assuming for the moment that, though Petitioner brought the same claim against the same Respondent/Defendant and had a court of competent jurisdiction resolve his claim on the merits, and that Petitioner is correct that the D.C. Circuit's opinion has no preclusive effect on this Court, Petitioner's habeas petition would still be denied.

Had the Court engaged in a comparison between the 1972 Regulations and the 2000 Regulations, Petitioner's *ex post facto* challenge would fail again. Petitioner submitted no evidence to show that the Parole Commission significantly increased his chances of prolonged incarceration by resorting to the 2000 Regulations, and one federal district court has already determined that "the [D.C. Parole] Board's discretion under the 1972 Regulations was so broad that [Wilson] has not effectively pled that application of the 2000 Regulations significantly increased the risk of his longer incarceration." *Wilson v. Fullwood*, 772 F Supp. 2d 246, 259 (D.D.C. 2011). The *Wilson* court explained:

> Under § 105.1 of the 1972 Regulations as well as the same section of the 1981 Regulations (collectively, the "pre–1987 Regulations") the D.C. Parole Board operated with discretion that was "almost unbridled," *Sellmon I*, 551 F. Supp. 2d at 86 n. 15, and "totally unfettered," *Sellmon v. Reilly*, 561 F. Supp. 2d 46, 50 (D.D.C. 2008), applying loose guidelines and no formal point-scoring system, *Austin*, 606 F. Supp. 2d at 9. "The pre–1987 Regulations are thus of minimal help in demonstrating how the Board exercised its discretion in practice prior to 1987." *Sellmon I*, 551 F. Supp. 2d at 86 n. 15. In other

4

words, the pre–1987 Regulations gave the Board, and now the Commission, so much discretion that the Court simply cannot compare, based on Plaintiff's allegations, how the Commission might have evaluated parole under those regulations with how the Commission did evaluate parole under the modern 2000 Guidelines. Given the breadth of this pre–1987 discretion and Plaintiff's failure to plead facts sufficient to allow the Court to compare his parole consideration under the 2000 Guidelines to consideration under the pre–1987 Regulations, Plaintiff fails to state a claim upon which relief may be granted.

Wilson, 772 F. Supp. 2d at 267. In fact, in Petitioner's previous litigation, the United States District Court for the District of Columbia concluded that:

> Phillips still could not show that the outcome in his case would have been any different under the pre-1987 regime, given the totally unstructured character of the Board's parole decisions prior to 1987. Unlike the 1987 Regulations, which based the presumption of parole eligibility on a numerical calculation and limited the grounds on which the Board could depart to an enumerated list, under the pre-1987 regime, the Board's discretion to grant or deny parole was totally unfettered. It could grant parole only if, after weighing a variety of factors, it "appeared . . . that there [was] a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release [was] not incompatible with the welfare of society, and that he [had] served the minimum sentence imposed. . . ." 9 D.C.R.R. § 105 (1972). In Phillips's case, parole was denied on the grounds that he hadn't yet sufficiently accounted for his offense and that he presented a more serious risk than his point score indicated. *Therefore, even if Phillips could make a factual showing that the Board would not have considered offense accountability in making its parole determination in his case, he still would have to demonstrate that the Board would not have exercised its unlimited discretion to deny parole for other reasons.* Given that the risk posed by an offender was the central question in the Board's considerations pre-1987, Phillips would likely "have been denied parole under either set of guidelines." Glascoe v. Bezy, 421 F.3d 543, 549 (7th Cir. 2005).

Sellmon v. Reilly, 561 F. Supp. 2d 46, 50 (D.D.C. 2008) (citations to record omitted) (emphasis added). Here, Petitioner's claims fail for the same reasons articulated in Sellmon.

5

## Equal Protection and Petitioner's Requested Relief

Finally, though neither party nor the R&R specifically addressed Petitioner's Equal Protection argument, the Court concludes Petitioner has failed to state the elements of such a claim. Petitioner complains that the 2000 Guidelines unfairly targeted "a specific class of offender (e.g., murder, rape, multiple offenses) for harsher treatment and longer prison terms." (Doc. 1, at 5). To prevail on an equal protection claim, a plaintiff must present evidence that "he has been treated differently from persons who are similarly situated." *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010); *see also Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 551 (3d Cir. 2011) ("proof of [class-based] discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). However, even if Petitioner had sufficiently pled the elements of an Equal Protection claim, it is the Court's view that, as a matter of law, Petitioner could not receive the relief to which he believes he is entitled.

Petitioner's requested relief is "his immediate release from confinement," (Doc. 1, at 12), relief that forms the "core" of a petition for habeas corpus. *See Wilkinson*, 544 U.S. at 82, 125 S. Ct. at 1248.

> Dotson and Johnson seek relief that will render invalid the state procedures used to deny parole eligibility and parole suitability. Neither respondent seeks an injunction ordering his immediate or speedier release into the community. . . . [A] favorable judgment will not necessarily imply the invalidity of their convictions or sentences. Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed consideration of a new parole application. Success for Johnson means at most a new parole hearing at

6

which Ohio parole authorities may, in their discretion, decline to shorten his prison term. Because neither prisoner's claim would necessarily spell speedier release, neither lies at the core of habeas corpus.

*Id.* (internal citations and quotation marks omitted). Thus, assuming that Plaintiff can make a viable *Ex Post Facto*, Due Process, or Equal Protection challenge, he "would gain at most a new parole hearing at which . . . the USPC may, in its discretion, decline to shorten their prison terms." *See Sellmon v. Reilly*, 551 F. Supp. 2d 66, 84 (D.D.C. 2008). Therefore, the Court cannot grant Petitioner the relief he seeks under these claims.

## Conclusion

Again, Petitioner has not shown how the Commission's use of the 2000 Regulations instead of the 1972 Regulations created a significant risk of prolonging his incarceration by making parole release more unlikely. Because Petitioner's claim was litigated fully and Petitioner again has failed to show any possibility of success on the merits of his claim, the Court adopted Judge Carlson's Report & Recommendation. Petitioner has not established any of the grounds necessary for obtaining a motion for reconsideration. As such, the Court will deny the motion. A separate Order follows.

Robert D. Mariani
United States District Court Judge

7